UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL O'CONNOR,<br><br>Plaintiff,<br><br>v.<br><br>CYMER, LLC,<br><br>Defendant. | Case No. 1:16-cv-00532-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This matter comes before the Court on Defendant Cymer, LLC's Motion for Summary Judgment. Dkt. 33. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons outlined below, the Court finds good cause to GRANT the Motion for Summary Judgment.

# II. BACKGROUND

O'Connor began working for Cymer as a Field Service Specialist in 1996 in San Diego, California. Three years later, Cymer transferred O'Connor to Boise, Idaho, to work as a Field Service Engineer ("FSE") at Micron Technology Inc. In this position, O'Connor serviced Cymer's lasers in use at Micron's facilities. Through a contract with Micron, Cymer was required to service its lasers twenty-four hours a day, seven days a

week and to keep its equipment in service and operational 99.5% of the time. For most of his tenure in Boise, O'Connor was Cymer's only FSE on-call twenty-four hours a day, seven days a week. Through the years, O'Connor progressed at Cymer from an FSE 1 to an FSE 4—the highest level FSE. Cymer also gave O'Connor annual pay raises and bonuses.

In July 2012, David Robertson became O'Connor's manager. Cymer had employed Robertson since 1991. When he became O'Connor's manager, Robertson began reviewing the performance of Cymer's lasers at Micron. He thought O'Connor was not properly maintaining the lasers, was not meeting the requirement to keep the equipment in service and operational 99.5% of the time, and that repairs were taking longer than expected. O'Connor disagrees with Robertson's assessment of his performance. In his 2012 and 2013 performance reviews, Robertson rated O'Connor's overall performance as a 3.2 and 3.26 respectively; under Cymer's rating system, any rating between at 3.00 and 3.99 indicated that the employee was meeting expectations. In addition, O'Connor notes that, despite Robertson's alleged concerns about his performance, Robertson gave him merit-based raises and merit-based bonuses in 2013 and 2014 for his performance in 2012 and 2013, respectively.

Around April 2014, Robertson began scheduling phone calls with O'Connor to discuss his performance. O'Connor asserts these calls were unnecessary because there was no problem with his performance and Robertson was simply "picking on" him.

At some point in 2013 or 2014, O'Connor contacted Dawn Vinson, a member of Cymer's Human Resources Department, and reported that that Robertson was harassing

him. O'Connor maintains that, over the course of several years, Robertson made hundreds of disparaging comments about O'Connor's longevity of service and income, told O'Connor he needed to find a new position, and asked O'Connor about his timeline for leaving Cymer. O'Connor also asserts Robertson repeatedly and often described the new, young field service technicians as "supermen." In June 2014, O'Connor contacted Vinson and stated that he wanted to file a harassment claim against Robertson. O'Connor asserts Vinson discouraged him from filing the claim. It is not clear whether O'Connor went through with this claim and it does not appear that Vinson ever produced a written report regarding O'Connor's complaints. Vinson did, however, discuss O'Connor's allegations with Robertson, who denied them.

On August 5, 2014, Robertson put O'Connor on a Performance Improvement Plan ("PIP"). Vinson reviewed the PIP before Robertson gave it to O'Connor and discussed with Robertson his concerns and expectations regarding O'Connor's performance. O'Connor was required to complete the PIP in 90 days. Robertson gave O'Connor the PIP the day before he was scheduled to go on a two-week vacation, of which Robertson was aware. In addition, Robertson was scheduled to go on vacation immediately after O'Connor's return. O'Connor maintains Robertson told him to "read [the PIP] and weep," and that he would never receive another favorable performance review.

The PIP outlined examples of O'Connor's alleged deficient performance. O'Connor maintains these examples are "demonstrably false." O'Connor complained to Vinson about the false statements in the PIP and, on October 1, 2014, he provided some notes, emails, and "oracle service reports" to Vinson in an attempt to disprove

MEMORANDUM DECISION AND ORDER – 3

Robertson's statements. Vinson investigated and discussed the allegations in the PIP with both Robertson and O'Connor. O'Connor asserts that Vinson told him she was removing all the false statements from the PIP. O'Connor then believed there was no foundation for the PIP and that he was no longer bound by the PIP. Accordingly, on October 31, 2014, O'Connor sent an e-mail to Robertson, copying Vinson, saying, "I will no longer attend nor talk to you about anything to do with this PIP. You know why --."

Cymer maintains that Vinson and Robertson made clear to O'Connor that he was still bound by and required to complete the PIP, and that completion of the PIP was a condition of his continued employment. Cymer asserts that, because O'Connor refused to participate in the PIP or discuss the PIP with Robertson, on November 5, 2014, Vinson and Robertson terminated O'Connor's employment with Cymer. O'Connor was 52 years old at the time of his termination. O'Connor believes Vinson and Robertson terminated him because of his age. He notes that the PIP was the first discipline he had experienced in his 18 years at Cymer, he did not think his employment depended on completing the PIP, and Robertson and Vinson jumped straight to termination instead of utilizing a progressive discipline plan.

Following O'Connor's departure from Cymer, Randy Tisdale performed O'Connor's duties until Cymer hired another FSE. Tisdale, who was born on February 26, 1962, is three weeks younger than O'Connor, who was born on February 2, 1962. In March 2015, Cymer hired Peter Tomchak as an FSE 2 in Boise to replace O'Connor. Tomchak was born on April 6, 1970. Thus, he was 44 years old when he replaced O'Connor.

O'Connor filed this case on December 12, 2016. He then filed an Amended Complaint in May 2017. Dkt. 22. O'Connor asserts claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Idaho Human Rights Act ("IHRA").[1] In August 2017, this case was transferred to the undersigned. On January 12, 2018, Cymer filed the pending Motion for Summary Judgment. It is now fully briefed and ripe for decision.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

---

[1] Because federal law guides the interpretation of the IHRA, the Court's analysis is the same under both statutes and the Court need only address the federal law. *Hatheway v. Bd. of Regents of Univ. of Idaho*, 310 P.3d 315, 322 (Idaho 2013).

317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. ANALYSIS

The ADEA makes it "unlawful for an employer . . . to discharge any individual," or otherwise discriminate against an employee, "because of such individual's age." 29 U.S.C. § 623(a). "To prove discrimination because of age, [O'Connor] must introduce evidence from which a reasonable jury could conclude, in light of common experience, that it was more likely than not that the employer's adverse action was motivated by consideration of his age." *Maxfield v. Brigham Young Univ.–Idaho*, 27 F. Supp. 3d 1077, 1086 (D. Idaho 2014) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579–80 (1978)). "Age discrimination can be established through either direct or indirect evidence." *Mousaw v. Teton Outfitters, LLC*, No. 414CV00508EJLREB, 2016 WL 5746344, at *4 (D. Idaho Sept. 30, 2016) (citing *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005)). However, simply proving age "played a role" in the decision to discharge an employee is not enough; rather, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that mixed-motive theory applicable to Title VII claims is not available in ADEA claims).

The Ninth Circuit utilizes the three-step *McDonnell Douglas* burden-shifting framework to analyze age discrimination cases. *Id.*; *see also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

> Under this framework, the employee must first establish a prima facie case of age discrimination. If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (internal citations omitted). O'Connor "can establish a prima facie case of disparate treatment by demonstrating that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "The requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889; *see also Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.").

### A. Prima Facie Case of Age Discrimination

The parties do not dispute (1) that O'Connor was at least forty years old or (3) that Cymer discharged him. The parties do dispute the second and fourth elements of O'Connor's prima facie case. The Court will address each in turn.

#### 1. Satisfactory Performance

Cymer first asserts O'Connor was not performing his job satisfactorily because he refused to participate in weekly meetings with Robertson regarding his performance, refused to comply with the PIP, and refused to discuss the PIP with Robertson. In response, O'Connor asserts that he has an 18-year record of exemplary performance, his final two performance reviews show he was meeting expectations, and Cymer awarded him merit-based raises and bonuses in the two years preceding his termination. O'Connor admits that he was not performing his job perfectly, but he asserts the evidence shows his performance was sufficient such that Cymer should not have terminated him.

None of the cases cited by either of the parties is determinative on this point. For example, Cymer cites cases in which companies successfully combated discrimination claims by showing they terminated the employee for "insubordination." These cases are not binding here because it is not clear yet whether O'Connor's conduct rises to the level of insubordination worthy of termination. For example, in *Rose v. Plastikon Industries, Inc.*, an unpublished case Cymer relies on, the district court originally found there were "many genuine disputes of material facts that preclude summary judgment" on the plaintiff's retaliatory termination claim. No. C 10-04355 WHA, 2011 WL 6012544, at *2 (N.D. Cal. Dec. 1, 2011). Then, at trial, the jury found for the employer and the district

court entered judgment against the plaintiff. 537 F. App'x 750, 751 (9th Cir. 2013). The Ninth Circuit affirmed the jury's finding on substantial evidence review, noting the employer had "presented evidence supporting its claim that it fired [the employee] solely because of his threatening and insubordinate behavior towards his supervisor and that it did not consider other factors, including [the employee's] discrimination and harassment complaint." *Id.* The employer "buttressed" its case by presenting "[e]vidence of other Plastikon employee terminations." *Id.* This case is still at the summary judgment stage, not post-trial; accordingly, a fact-finder has not reached a conclusion on Cymer's reasons for termination. Moreover, Cymer has not buttressed its case with evidence that it has in the past terminated employees for conduct identical or very similar to O'Connor's.

Nevertheless, the Ninth Circuit's decision in *Diaz*, a case involving multiple plaintiffs, is at least somewhat informative. Three of the plaintiffs in *Diaz* established that they "generally performed dependably and without incident." 521 F.3d at 1208. Although there were "[d]eficiencies in their performance," these deficiencies "were relatively minor and infrequent." *Id.* Thus, the Ninth Circuit found these plaintiffs had at least established a genuine issue of fact as to whether their performance was satisfactory. *Id.* This was even true for Moreno, one of the plaintiffs who had "damaged [company] property three times over the course of approximately four years and once violated a company safety rule." *Id.* In contrast, the court found Renteria, another plaintiff, had not met his burden because the company presented evidence that, "over an extended period of time, [he] openly violated [the company's] policy against solicitation on company property and continued to do so even after receiving a warning." *Id.* (citing *Mungro v.*

*Giant Food, Inc.*, 187 F.Supp.2d 518, 522 (D. Md. 2002) for the proposition that "[a] plaintiff who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance").

Here, O'Connor has presented evidence showing his performance was satisfactory and at least "meet expectations" for 18 years, up until shortly before Cymer terminated him. Moreover, O'Connor disputes the allegations that form the basis of the PIP, the first form of discipline he ever experienced from Cymer. O'Connor does admit that he ultimately refused to discuss the PIP with Robertson and that he did not follow Robertson's instructions regarding the PIP. However, following *Diaz*, O'Connor's performance is not deemed unsatisfactory simply because he had some deficiencies in his work. It is not clear from the evidence before the Court that the deficiencies in O'Connor's performance constitute unsatisfactory performance. There are genuine issues of material fact on this point that must be determined by a fact finder.

<u>2. Replacement By Younger Employee</u>

Next, Cymer argues it did not replace O'Connor with a substantially younger employee with equal or inferior qualifications. The Ninth Circuit has adopted the Seventh Circuit's "rebuttable presumption approach" to this element. *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015). Under this approach, "an average age difference of ten years or more between the plaintiff and the replacements will be presumptively substantial, whereas an age difference of less than ten years will be presumptively insubstantial." *Id.* A plaintiff who is not ten years or more older than his or her replacement can rebut the presumption by producing additional evidence to show that the employer considered his

or her age to be significant." *Id.* "The plaintiff can produce either direct or circumstantial evidence to show that the employer considered age to be a significant factor." *Id.*

Here, Cymer temporarily replaced O'Connor with another employee who was just three weeks younger than him. Several months later, Cymer hired Tomchak as an FSE 2. At 44-years-old, Tomchak was just eight years younger than O'Connor. Accordingly, this age difference is presumptively insubstantial.

To show that age was a significant factor in his termination, Cymer cites comments made by Robertson. In O'Connor's deposition, he stated "I got a lot of age-related comments from [Robertson]" during the two and a half years Robertson was his supervisor. Dkt. 33-3, at 92. In his brief, O'Connor complains that for "years on end" Robertson made "explicitly ageist and derogatory comments . . . numbering in the hundreds, if not the thousands." Dkt. 34, at 14. O'Connor's characterization of Robertson's comments are not supported by the record. In O'Connor's deposition, he could not recite a single, specific, age-related comment Robertson made. *Id.* at 92–93. The Court questions why—if Robertson made hundreds or thousands of derogatory, ageist comments—O'Connor cannot recite a single one. O'Connor did recite in his deposition many specific examples of Robertson making comments about his tenure and salary. *Id.* However, O'Connor has not cited a single case holding that comments about an employee's tenure or income evidence age discrimination. In fact, the Supreme Court has explicitly found that "age and years of service are analytically distinct;" accordingly, "an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co.*

*v. Biggins*, 507 U.S. 604, 611 (1993). Following *Hazen Paper*, the Court cannot equate Robertson's comments about O'Connor's tenure and income to ageist comments.[2]

O'Connor also cites comments Robertson made to him about "new young guys," which Robertson described as "supermen." O'Connor maintains these comments made him feel like his job was in jeopardy. Cymer argues these are stray remarks that do not evidence age discrimination against O'Connor. Cymer's position is supported by case law. The Ninth Circuit has held that "'stray' remarks are insufficient to establish discrimination," *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990), particularly when unrelated to the decisional process, *Washington v. Honeywell, Inc.*, 94 F.3d 654 (9th Cir. 1996) (citing *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989)); *Sondhi v. Lockheed Missiles & Space Co.*, 62 F.3d 1425 (9th Cir. 1995). For example, in *Merrick* the court found an executive's comment that he chose a younger co-worker for promotion because he was "a bright, intelligent, knowledgeable young man" was a "stray remark" that did not establish that the executive's decision not to promote the plaintiff was based on age. *Id.* at 1438-39; *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding comments made by plaintiff's supervisor and by defendant's Vice President of Personnel that "[w]e don't necessarily like grey hair" and "[w]e don't want unpromotable fifty-year olds around," while not merely "stray

---

[2] O'Connor also argues that the comments about his pay and tenure "were not, in actuality, about his pay and tenure, but rather his age." Dkt. 34, at 16. In support of this argument, he points out that, at some point in 2014, he offered to take a fifty percent pay cut and demotion to technician and Cymer rejected that offer. The Court finds this event does not thread the needle necessary to overcome the presumptively insubstantial age difference between O'Connor and Thomchak. There are a multitude of non-discriminatory reasons Cymer may have rejected this offer.

MEMORANDUM DECISION AND ORDER – 12

remarks," were too general and unrelated to plaintiff's termination to create an inference of discrimination). The Court similarly finds Robertson's comments about the young technicians being "supermen" are stray remarks that are insufficient to establish discrimination. The vague comments were not related to the decision to terminate O'Connor, did not reference O'Connor, and were similar in content to the comments at issue in *Merrick* and *Nesbit*. *See also Turner v. N. Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992) (finding manager's comment that he was sending plaintiff "three young tigers" to assist with operations was insufficient to establish age discrimination as it "does not in any way refer to [plaintiff's] age nor is it in any way related to his discharge").

Finally, although not determinative, the Court is somewhat persuaded by the fact that Robertson was nine years older that O'Connor and Vinson was just two years younger than O'Connor. Although it is possible for one person in a protected class to discriminate against someone else in that same class, the Court finds these facts nevertheless weigh in favor of its conclusion that O'Connor has failed to produce either direct or circumstantial evidence that Cymer considered O'Connor age as a factor in his termination.

The Court notes that O'Connor may satisfy the last requirement of his prima facie case of age discrimination by either showing that he was "replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz*, 521 F.3d at 1207. As set forth in the proceeding paragraphs, O'Connor has failed to show Cymer replace him with a substantially younger employee. For those same reasons

discussed above, O'Connor has not created a triable issue of fact as to whether Cymer discharged him under circumstances otherwise giving rise to an inference of age discrimination. O'Connor cites no additional evidence, beyond Robertson's comments about his tenure and salary and about the young "supermen" technicians, to support this point. Accordingly, the Court finds O'Connor has failed to establish this final element of his prima facie case. Because O'Connor must establish all four elements, the Court must conclude that he has not established his prima facie case, and the Court must enter summary judgment against him. *See Diaz*, 521 F.3d at 1215.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Cymer, LLC's Motion for Summary Judgment (Dkt. 33) is GRANTED.
2. The Court will enter judgment separately in accordance with Fed. R. Civ. P. 58.

DATED: August 7, 2018

_____
David C. Nye
U.S. District Court Judge