UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MICHAEL O'CONNOR,

      Plaintiff,

v.

CYMER, LLC, a Nevada company,

      Defendant.

Case No. 1:16-cv-00532-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

This matter comes before the Court on Defendant Cymer, LLC's ("Cymer") Motion for Summary Judgment. Dkt. 33. The Court's previous decision granting summary judgment was vacated by the Ninth Circuit and the case was remanded for further analysis.[1] Following remand, the Court allowed limited, supplemental briefing on the issues outlined by the Ninth Circuit.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court again finds good cause to

---

[1] *O'Connor v. Cymer, LLC*, 772 Fed. Appx. 602–03 (9th Cir. 2019).

GRANT Cymer's Motion for Summary Judgment.

## II. BACKGROUND[2]

Plaintiff Michael O'Connor began working for Cymer as a Field Service Specialist in 1996 in San Diego, California. Three years later, Cymer transferred O'Connor to Boise, Idaho, to work as a Field Service Engineer ("FSE") at Micron Technology Inc. In this position, O'Connor serviced Cymer's lasers in use at Micron's facilities. Through a contract with Micron, Cymer was required to service its lasers twenty-four hours a day, seven days a week and to keep its equipment in service and operational 99.5% of the time. For most of his tenure in Boise, O'Connor was Cymer's only FSE on-call twenty-four hours a day, seven days a week. Through the years, O'Connor progressed at Cymer from an FSE 1 to an FSE 4—the highest level FSE. Cymer also gave O'Connor annual pay raises and bonuses.

In July 2012, David Robertson became O'Connor's manager. Cymer had employed Robertson since 1991. When he became O'Connor's manager, Robertson began reviewing the performance of Cymer's lasers at Micron. He thought O'Connor was not properly maintaining the lasers, was not meeting the requirement to keep the equipment in service and operational 99.5% of the time, and that repairs were taking longer than expected. O'Connor disagrees with Robertson's assessment of his performance. In his 2012 and 2013 performance reviews, Robertson rated O'Connor's overall performance as a 3.2 and 3.26 respectively. Under Cymer's rating system, any rating between at 3.00 and 3.99 indicated

---

[2] The following facts are construed in the light most favorable to O'Connor, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

that the employee was meeting expectations. In addition, O'Connor notes that, despite Robertson's alleged concerns about his performance, Robertson gave him merit-based raises and merit-based bonuses in 2013 and 2014 for his performance in 2012 and 2013, respectively.

Around April 2014, Robertson began scheduling phone calls with O'Connor to discuss his performance. O'Connor asserts these calls were unnecessary because there was no problem with his performance and Robertson was simply "picking on" him. Dkt. 34-1, at 4.

In June of 2014, O'Connor contacted Dawn Vinson, a member of Cymer's Human Resources Department, and reported that Robertson was harassing him. O'Connor maintains that, over the course of several years, Robertson made hundreds of disparaging comments about O'Connor's longevity of service and income, told O'Connor he needed to find a new position, and asked O'Connor about his timeline for leaving Cymer. O'Connor also asserts Robertson repeatedly and often described the new, young field service technicians as "supermen." In June 2014, O'Connor contacted Vinson and stated that he wanted to file a harassment claim against Robertson. O'Connor asserts Vinson discouraged him from filing the claim. It is not clear whether O'Connor went through with this claim and it does not appear that Vinson ever produced a written report regarding O'Connor's complaints. Vinson did, however, discuss O'Connor's allegations with Robertson, who denied them.

On August 5, 2014, Robertson put O'Connor on a Performance Improvement Plan ("PIP"). Vinson reviewed the PIP before Robertson gave it to O'Connor and discussed

with Robertson his concerns and expectations regarding O'Connor's performance. O'Connor was required to complete the PIP in 90 days. Robertson gave O'Connor the PIP the day before he was scheduled to go on a two-week vacation, of which Robertson was aware. In addition, Robertson was scheduled to go on vacation immediately after O'Connor's return. O'Connor maintains Robertson told him to "read [the PIP] and weep," and that he would never receive another favorable performance review. Dkt. 34-1, ¶¶ 15,16.

The PIP outlined examples of O'Connor's alleged deficient performance. O'Connor maintains these examples are "demonstrably false." *Id.*, ¶¶ 19, 21. O'Connor complained to Vinson about the false statements in the PIP and, on October 1, 2014, he provided some notes, emails, and "oracle service reports" to Vinson in an attempt to disprove Robertson's statements. Vinson investigated and discussed the allegations in the PIP with both Robertson and O'Connor. O'Connor asserts that Vinson told him she was removing all the false statements from the PIP. O'Connor then believed there was no foundation for the PIP and that he was no longer bound by the PIP. Accordingly, on October 31, 2014, O'Connor sent an e-mail to Robertson, copying Vinson, saying, "I will no longer attend nor talk to you about anything to do with this PIP. You know why—." Dkt. 34-6, at 10.

Cymer maintains that Vinson and Robertson made clear to O'Connor that he was still bound by and required to complete the PIP, and that completion of the PIP was a condition of his continued employment. Cymer asserts that, because O'Connor refused to participate in the PIP or discuss the PIP with Robertson, on November 5, 2014, Vinson and Robertson terminated O'Connor's employment with Cymer. O'Connor was 52 years old at the time of his termination. O'Connor believes Vinson and Robertson terminated him

because of his age. He notes that the PIP was the first discipline he had experienced in his 18 years at Cymer, he did not think his employment depended on completing the PIP, and Robertson and Vinson jumped straight to termination instead of utilizing a progressive discipline plan.

Following O'Connor's departure from Cymer, Randy Tisdale performed O'Connor's duties until Cymer hired another FSE. Tisdale, who was born on February 26, 1962, is three weeks younger than O'Connor, who was born on February 2, 1962. In March 2015, Cymer hired Peter Tomchak as an FSE 2 in Boise to replace O'Connor. Tomchak was 44 years old when he replaced O'Connor.

O'Connor filed this case on December 12, 2016. He then filed an Amended Complaint in May 2017. Dkt. 22. O'Connor asserted claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Idaho Human Rights Act ("IHRA").

On January 12, 2018, Cymer filed for Summary Judgment on these claims. The Court utilized the three-prong *McDonnel Douglas* test in analyzing O'Connor's claims.[3] After finding that O'Connor's claims were insufficient under the first prong of the test, the Court granted summary judgment to Cymer. On appeal, the Ninth Circuit reversed and remanded, finding that O'Connor had met the first prong, and instructed this Court to conduct an analysis of the remaining two prongs.

---

[3] The three-prong test is: (1) the employee must establish a prima facie case of age discrimination; (2) the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must show that the employer's reason was a pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id*.

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. DISCUSSION

The ADEA makes it "unlawful for an employer . . . to discharge any individual," or otherwise discriminate against an employee "because of such individual's age." 29 U.S.C.

§ 623(a).[4] "To prove discrimination because of age, [O'Connor] must introduce evidence from which a reasonable jury could conclude, in light of common experience, that it was more likely than not the employer's adverse action was motivated by consideration of his age." *Maxfield v. Brigham Young Univ.–Idaho*, 27 F. Supp. 3d 1077, 1086 (D. Idaho 2014) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579–80 (1978)). "Age discrimination can be established through either direct or indirect evidence." *Mousaw v. Teton Outfitters, LLC*, 2016 WL 5746344, at *4 (D. Idaho Sept. 30, 2016) (citing *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005)). However, simply proving age "played a role" in the decision to discharge an employee is not enough; rather, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that mixed-motive theory applicable to Title VII claims is not available in ADEA claims).

The Ninth Circuit utilizes the three-step *McDonnell Douglas* framework to analyze age discrimination cases. *Id.*; *see also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

> Under this framework, the employee must first establish a prima facie case of age discrimination. If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.

[4] Because federal law guides the interpretation of the IHRA, the Court's analysis is the same under both statutes and the Court need only address the federal law. *Hatheway v. Bd. of Regents of Univ. of Idaho*, 310 P.3d 315, 322 (Idaho 2013).

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (internal citations omitted).

## A. Prima Facie Case

O'Connor "can establish a prima facie case of disparate treatment by demonstrating that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "The requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F. 3d at 889; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous.").

Previously, the parties disputed only whether O'Connor was performing his job satisfactorily and whether Cymer discharged him under circumstances giving rise to an inference of age discrimination. The Court found that O'Connor's job performance was factually disputed and would have to be decided by a jury, but that O'Connor nonetheless could not establish a prima facie case because "Robertson's comments about his tenure and salary and about the young 'supermen' technicians were not enough to create a triable issue of fact as to whether Cymer discharged him under circumstances otherwise giving rise to an inference of age discrimination." Dkt. 37, at 13–14. However, on appeal, the Ninth Circuit found that, due to "the low burden sufficient to establish a prima facie case, a

reasonable factfinder could determine the evidence shows that O'Connor was discharged under circumstances otherwise giving rise to an inference of age discrimination." *O'Conner*, 772 Fed. Appx. at 603. As such, O'Connor has met the relatively low burden of establishing a prima facie case. Accordingly, the Court must continue its inquiry into Cymer's stated reason for O'Connor's termination.

## B. Legitimate, Non-Discriminatory Reason for Termination

Here, Cymer states that the reason it fired O'Connor was because of his insubordination. Regardless of whether O'Connor's work history was great or not, Cymer believes that his refusal to participate in the PIP warranted his termination. O'Connor concedes that Cymer has given a legitimate, non-discriminatory reason for his termination, but does not agree this is why he was terminated. Dkt. 52, at 4. O'Connor believes this reason is simply pretextual and that he was really fired because of his age. Thus, for purposes of the *McDonnell Douglas* analysis, Cymer has articulated a legitimate, non-discriminatory reason for O'Connor's termination—insubordination—and the second prong has been met.

## C. Pretext

In the last prong of the *McDonnell Douglas* analysis, "the burden shift[s] back to [the plaintiff] to come forward with evidence that the proffered reasons were a pretext for discrimination." *Noyes v. Kelly Services*, 488 F.3d 1163, 1169 (9th Cir. 2007). "Once the defendant fulfills this burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the *McDonnell Douglas* presumption of unlawful discrimination simply drops out of the picture." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885,

889 (9th Cir. 1994) (internal quotations omitted).

Under this prong, O'Connor "does not necessarily have to introduce additional, independent evidence of discrimination." *Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000). Whether or not O'Connor must introduce evidence beyond that constituting his prima facie case depends on the quality of the evidence that makes up his prima facie case. It must, in the very least, be more than the bare minimum needed to establish a prima facie case. *Wallis*, 26 F.3d at 890 ("[I]n those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas,* plaintiff has failed to raise a triable issue of fact."); *see also Chuang*, 225 F.3d at 1127 ("As the Supreme Court recently reaffirmed, a disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, *if* that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.") (emphasis added); *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) ("[T]he factfinder may infer 'the ultimate fact of intentional discrimination' without additional proof once the plaintiff has made out her *prima facie* case if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable.") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 ("We have held, clearly, that a plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing.").

"[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the

employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Id.* (citing *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994) (alterations in original)). However, "[w]here the evidence of pretext is circumstantial, rather than direct, the plaintiff must present 'specific' and 'substantial' facts showing that there is a genuine issue for trial." *Noyes*, 488 F.3d at 1170 (citing *Godwin*, 150 F.3d at 1222). "All of the evidence [as to pretext]—whether direct or indirect—is to be considered cumulatively." *Id.* (internal quotations omitted).[5]

As an initial matter, O'Connor relies on the same evidence he used to establish his prima facie case—the unfair nature of the PIP, Robertson's comments about the newer, younger workers being "supermen," and O'Connor's age, tenure, and salary. As has been noted, this was enough to overcome "the low burden sufficient to establish a prima facie case," *O'Conner*, 772 Fed. Appx. at 603, but that does not necessarily mean it is enough to "rebut the defendants showing," *Godwin*, 150 F.3d at 1220. The Court now must determine

---

[5] Cymer argues that *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), requires O'Connor to prove both that Cymer's reason for discharge was false *and* that discrimination was the real reason. However, the Ninth Circuit has explicitly rejected this argument, holding that at the summary judgment stage this imposes a heavier burden on a plaintiff than the law requires. *Noyes*, 488 F.3d at 1170–71.

if O'Connor's evidence "raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Raad*, 323 F.3d at 1194. The Court begins its analysis with whether O'Connor has shown that Cymer was more likely motivated by unlawful discrimination when it fired him.

### 1. *Cymer's Motivation*

#### a. Direct Evidence of Discrimination

Here, O'Connor argues that he received "a lot" of age-related comments from Robertson. Dkt. 34, at 12. O'Connor, through his deposition testimony, alleges that Robertson told him that "because of [Mr. O'Connor's] age, he wants me out." *Id.* O'Connor also alleges that Robertson said that he "might be too old for this job, for a field service job." Dkt. 52, at 7. Such comments made by Robertson about O'Connor's age would presumably, if believed, prove the fact of discriminatory animus without inference or presumption. *Godwin*, 150 F.3d at 1221.

However, after examining the deposition testimony, it is apparent that these allegations are misrepresentations.[6] In truth, neither statement was made by Robertson; both statements were made by O'Connor. Regarding the first comment, in response to a question asking O'Connor if he believed that Robertson's comments relating to tenure and salary equated to age discrimination, O'Connor replied, "I just feel when he tells me that I've been there too long, that basically *that because of my age, he wants me out*." Dkt. 33-3, at 36 (emphasis added). It is clear this comment did not originate from Robertson, but

---

[6] The Court does not suggest that this was done willfully. Nonetheless, the Court cautions counsel to take care not to misrepresent facts that are not only material but go to the core of the issue.

instead it is O'Connor explaining his own, subjective interpretation of certain comments Robertson made regarding tenure.

Similarly, the second comment was O'Connor's general summary of Robertson's unspecified comments and was never directly said by Robertson. In response to a line of questioning asking what comments Robertson made that prompted O'Connor to believe that he was fired because of his age, O'Connor stated "[a]nd [the comments] were – and basically, you know, you might be too old for this job, for a field service job." *Id.* at 82. Just as with the first comment, O'Connor has failed to show that Robertson ever made these comments.

Instead, the evidence clearly shows that, despite O'Connor alleging that Robertson made "hundreds of comments," *id.* at 83, 92, O'Connor has not identified any specific comments from Robertson regarding his age. Indeed, O'Connor even testified under oath that he could not recollect any specific conversation where either he or Robertson referenced his age. *Id.* at 93.

Only a minimal amount of direct evidence is needed to create a triable issue of fact. *Godwin*, 150 F.3d at 1221. But the evidence must be specific, substantial evidence of pretext. *Id.* Outside of these two misrepresented comments, O'Connor does not offer any other direct evidence of Cymer's discriminatory motives. Further, the Court finds that O'Connor's own subjective, self-serving interpretation of Robertson's unspecified comments is not enough to create a triable issue of fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Far Out Productions,*

*Inc.*, 247 F.3d at 997 ("[T]he non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment").

Additionally, the remainder of the evidence O'Connor relies on to show that Cymer was more likely motivated by unlawful discrimination—Robertson's comments about the younger workers being "supermen," tenure and salary, and the unfairness of the PIP—is circumstantial evidence because it does not directly refer to Robertson's age. In other words, it does not prove the fact of discriminatory animus without inference or presumption. *Godwin*, 150 F.3d at 1221. As such, the Court concludes that O'Conner has not presented sufficient direct evidence to convince a reasonable juror that Cymer's real reason for firing him was his age.

  **b.** Circumstantial Evidence of Discrimination

  *(i) Robertson's Comments About the New "Supermen"*

O'Connor argues that Robertson repeatedly described the new, young field service technicians as "supermen." Though these comments in no way refer to O'Connor's age, O'Connor believes that because he was older than the new technicians, it is reasonable to infer that Robertson preferred younger employees to older ones.

Robertson's reference to the younger technicians as "supermen" is similar to the comments employers made in *Coleman* and *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434 (9th Cir. 1990). In *Coleman*, the plaintiff was fired as part of a reduction-in-force mass

layoff and a younger employee was retained for the position the plaintiff had applied for. *Coleman*, 232 F.3d at 1284. The plaintiff relied on numerous pieces of evidence in his age discrimination case, one of which was that his employer refused to hire him because he was not "young and promotable." *Id.* at 1284. In affirming summary judgment in favor of the employer, the Ninth Circuit held, though it was sufficient to establish a prima facie case, the phrase "young and promotable" was "not sufficient to raise a question of fact" as to pretext. *Id.* at 1285.

Similarly, in *Merrick*, the plaintiff was passed over for two job promotions and eventually fired. *Merrick*, 892 F.2d at 1436. The executive in charge of one of the promotions stated that he chose the younger employee over the plaintiff because the younger employee was "a bright, intelligent, knowledgeable young man." *Id.* at 1438. In affirming summary judgment in favor of the employer, the Ninth Circuit held that this comment was not enough to raise an inference of age discrimination. *Id.* at 1439–40.

Further, the Ninth Circuit has held comments from employers even more suggestive than "young and promotable," "bright, intelligent, knowledgeable young man," and "supermen" to be likewise insufficient. *See Nexbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that employer's use of the phrase "[w]e don't necessarily like grey hair" did not support an inference of discriminatory motive); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918–19 (9th Cir. 1996) (holding that employer's use of the phrase "old timers" did not support an inference of discriminatory motive); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990) (holding that employer's use of the phrase "old-boy network" did not support an inference of discriminatory motive).

Based on the holdings in these cases, the Court finds that Robertson referring to the younger technicians as "supermen" is insufficient to support an inference of pretext. First, on its face, Robertson referring to newer technicians as "supermen" appears to complement their job performance, not their age. Additionally, the argument that because Robertson made positive comments about younger workers to an older employee—O'Connor—and that this suggests Robertson disliked O'Connor because of his age is shaky at best. Just because Robertson made positive comments about younger employees does not mean the opposite—that he disliked older employees. Further, insofar as calling the younger technicians "supermen" does unfavorably refer to O'Connor's age, such a reference is quite similar to the comments made by other employers that the Ninth Circuit has held to be insufficient to raise a question of fact as to pretext in this case.

*(ii) Robertson's Comments About Tenure and Salary*

Next, O'Connor contends that Robertson made numerous remarks relating to his tenure and salary. Although these comments varied, generally they would always include Robertson's opinion that O'Connor made too much money or that Robertson couldn't believe that O'Connor had been an FSE for so many years. According to O'Connor, these comments equate to age discrimination.

"[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). Adverse employment actions motivated by factors strongly correlated with age alone do not give rise to liability under the ADEA. *See id.* at 611 ("Because age and years of service are analytically distinct, an employer can take account

of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"). However, this does not "preclude the possibility" that these factors "may be a proxy for age," such as when an "employer may suppose a correlation between the two factors and act accordingly." *Id.* at 612–13. In these cases, a plaintiff must provide sufficient evidence to show that the discriminatory conduct was actually motivated by age, not a related factor. *See id.* at 113 (holding that an employer dismissing an employee in order to avoid paying pension benefits, without more evidence of discriminatory intent, did not violate the ADEA); s*ee also, Kentucky Retirement Systems v. EEOC*, 554 U.S. 135, 148 (2008).

In *Kentucky*, the Supreme Court dealt with "the quite special case of differential treatment based on pension status." *Id.* There, Kentucky had a pension plan for certain state employees that was contingent, in part, on age. *Id.* at 138. Kentucky—the employer in this case—allegedly discriminated against employees based on their pension. *Id.* An employee sued for ADEA violations, believing that because the pension itself was based in part on age, such discrimination was based on age. *Id.* at 140 The Supreme Court came to a different conclusion. In listing several reasons illustrating the differences in how Kentucky treated these employees and that those actions were not actually motivated by age, the Supreme Court cited to *Hazen*, stating that, "as a matter of pure logic, age and pension status remain analytically distinct concepts. . . . That is to say, one can easily conceive of decisions that are actually made 'because of' pension status and not age, even where pension status is itself based on age." *Id.* at 143 (internal citation omitted).

Though *Hazen* and *Kentucky* deal primarily with pension status and not tenure or

salary, the Court finds the analyses in these cases instructive on how to approach factors that may be a proxy for age. Pension is often associated with age, and in some instances—such as in *Kentucky*—is directly linked to age. Likewise, tenure and salary are often associated with age. However, pension still remains "analytically distinct" from age under the ADEA. *Hazen*, 507 U.S. at 611.[7] This same logic applies to tenure and salary, which share a weaker connection to age than pension.

Here, O'Connor has not provided any evidence to show that Cymer treated his tenure or salary as a proxy for his age. Rather, O'Connor attempts to distinguish himself from the respective plaintiffs in *Hazen* and *Kentucky* by alleging that he was the victim of many "repeated, explicitly ageist comments" (Dkt. 34, at 15), such that Robertson's comments on tenure and salary can be inferred to target his age. Though it is true that the plaintiffs in *Hazen* and *Kentucky* did not experience repeated, explicitly ageist comments, the Court has already found that O'Connor has failed to show that he experienced such abuse himself. Thus, O'Connor has not provided a link between Robertson's comments and his age.

O'Connor additionally argues that Robertson's comments related to his tenure and salary must have been about his age because O'Connor offered to take a fifty percent pay cut along with a demotion to a technician, but Cymer rejected this offer. That said, there are a multitude of non-discriminatory reasons Cymer may have rejected this offer. As such,

---

[7] The Supreme Court takes care to note in *Hazen* that, though there may not be liability under the ADEA, an employer who fires an employee based on pension may be in violation of other federal statutes, such as ERISA. *Hazen*, 507 U.S. at 612.

Robertson's comments regarding tenure and salary do not, without more, violate the ADEA. *See Hazen*, 507 U.S. at 612 ("[Discrimination based on pension] would not, without more, violate the ADEA.").

c. Summary

One of the ways O'Connor may show pretext is "by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127. O'Connor has not presented sufficient direct evidence to create a triable issue of fact because he has not identified a single comment made by any Cymer employee regarding his age.

Further, Robertson's comments labeling the younger technicians as "supermen," under Ninth Circuit law, is not sufficient to create a triable issue of fact. Likewise, O'Connor has failed to show that Robertson's comments about his tenure and salary were a proxy for his age. Thus, O'Connor has failed to establish a triable issue of fact regarding Cymer's pretextual motives.

2. *Cymer's Proffered Explanation*

A plaintiff may also establish pretext "by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable." *Chuang*, 225 F.3d at 1127. O'Connor argues that he was an exemplary worker who was performing his job at the very least satisfactorily and should not have been fired. To support this, O'Connor highlights his merit-based raise and bonus he received mere months before he was terminated, the fact that he received zero complaints from Micron, and the comments of Steve Munsen, a manager who supervised O'Connor before Robertson, who said that O'Connor's performance was "superb" and that O'Connor was

"one of, if not the, best field engineers that ever worked" for him. Dkt. 34, at 8.

However, this evidence's connection to Cymer's stated reason for O'Connor's termination—insubordination—is tenuous at best. O'Connor's evidence shows that he was performing his job satisfactorily, at least until a few months before his termination. Though the parties dispute whether O'Connor was performing his job satisfactorily at the time he was terminated, this analysis applies mainly in the first prong of the *McDonnell Douglas* analysis where, in order to establish a prima facie case, O'Connor needed to show that he was performing his job satisfactorily. *Diaz*, at 1207. Now, if Cymer's reason for firing O'Connor was his poor work performance, the evidence he presents here would likely prevent summary judgment in favor of Cymer. A merit-based raise and bonus, along with a clean complaint history and very favorable comments from a supervisor, would certainly be specific and substantial enough to convince a reasonable juror that the stated reason— poor work performance—is unworthy of credence.

The issue here, though, is not the quality of O'Connor's work, but his refusal to participate in the PIP in direct contradiction of directions from his superiors. O'Connor's work history, even if exemplary, has little to do with his decision to disregard the PIP. When an employee refuses to follow his employer's instructions, he has engaged in insubordination, which constitutes grounds for termination. *See Cornwell v. Electra Cent. Credit Union*, 493 F.3d 1018, 1034 (9th Cir. 2006) (upholding summary judgment in favor of employer where the employee refused to cooperate with a request from his superiors); *Ray v. Safeway Stores, Inc.,* 614 F.2d 729, 731 (10th Cir. 1980) (holding that employee was lawfully terminated for insubordination where employee "refused to comply with a

direct order to switch jobs, an order that the company was authorized to make"); *see also Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 605 (9th Cir. 2004) (holding that insubordination was grounds for termination); *Payne v. Norwest Corp.*, 185 F.3d 1068 (9th Cir. 1999) (same).

In this case, Vinson, the HR Director, explicitly told O'Connor that even though she was reviewing the PIP in light of his complaints about Robertson he was "expected to continue thru [sic] [his] PIP action plan and [the] expectation is that [he would] meet all the deadlines and actions requested." Dkt. 33-4, at 11. Despite this, O'Connor refused to participate in the PIP, telling Robertson and Vinson "I will no longer attend nor talk to you about anything to do with this PIP. You know why --." Dkt. 33-3, at 78. No matter how great O'Connor's work performance had been up to this point, his decision to ignore clear direction from both his supervisor and Cymer's HR Director violated Cymer's Standards of Conduct Policy.[8]

Notwithstanding, O'Connor alleges he believed that Vinson was reviewing the PIP and removing any false examples of deficient work performance from it. This allegation, however, does not excuse O'Connor's refusal to follow the PIP. The evidence clearly shows that O'Connor was told to continue participating in the PIP by two of his superiors. Importantly, O'Connor does not dispute Vinson told him to continue participating in the PIP while the investigation was ongoing, nor does he dispute that he willfully chose not to

---

[8] This policy provides, in part, that any "[f]ailure to perform assigned work, to carry out a reasonable request of management, or any act of insubordination" may "result in disciplinary action, up to and including termination." Dkt. 33-4, at 22.

do so.

O'Connor continues to avow that his good work performance is nonetheless relevant because it shows that there was no need for the PIP in the first place. O'Connor believes it was Robertson's dislike of him—specifically his age—that motivated the creation of the PIP, not O'Connor's deficient work performance. In making these arguments, O'Connor relies on much of the same evidence he used in arguing that Cymer was more likely motivated by a discriminatory motive when it fired him (*e.g.*, Robertson's comments about "supermen," tenure, and salary). As the Court has already found that this evidence does not refer to O'Connor's age, it necessarily cannot support O'Connor's assertions that Robertson's—and therefore Cymer's—bias against his age motivated the PIP.

Similarly, O'Connor also alleges his good work history is relevant because this insubordination was his first offense, and Cymer's decision to terminate him before utilizing other, progressive disciplinary measures is evidence of age discrimination. However, O'Connor was well aware that his failure to participate in the PIP could lead to his termination, as it was mentioned in both Cymer's Standards of Conduct Policy and on the signature page of the PIP itself, just above O'Connor's own signature. Dkt. 33-4, at 22; Dkt. 33-3, at 195. Further, Cymer's business decision and judgment are not subject to review by the Court, nor does a seemingly poor business decision support the inference that Cymer discriminated against O'Connor on the basis of his age. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1148 (9th Cir. 2017) (The wisdom of [Hilton's] judgment is not subject to review by this Court, nor does it suggest Hilton's stated reasons for terminating Merrick were pretextual."); *Coleman*, 232 F.3d at 1285 ("That Quaker made

unwise business judgments or that it used a faulty evaluation system does not support the inference that Quaker discriminated on the basis of age.").

In sum, O'Connor has failed to show that Cymer's stated reason for his termination—insubordination—is unworthy of credence. O'Connor does not dispute that he received direction from both Robertson and Vinson that he needed to complete the PIP, and that he blatantly refused to do so. Further, Cymer's decision to terminate O'Connor after his first offense does not support an inference of age discrimination.

### 3. Cumulative Effect

"All of the evidence [as to pretext]—whether direct or indirect—is to be considered cumulatively." *Noyes*, 488 F.3d at 1170. Until now, the Court has taken a piecemeal approach to the arguments and evidence presented by both sides. In considering the evidence as a whole, the Court's position that O'Connor has not presented a genuine issue of fact regarding age discrimination is unchanged. In the light most favorable to O'Connor, the evidence shows that Robertson did not like O'Connor and certainly picked on him or said mean things to him. It could be argued that Robertson placing O'Connor on the PIP was unfair or perhaps unnecessary. However, clearly absent are comments or actions creating a nexus between Robertson's behavior and O'Connor's age. There could be any number of reasons why Robertson felt the need to treat O'Connor the way he did, and perhaps none were fair or justified, but O'Connor has failed to show that any of them violated the ADEA. *See Hazen*, 507 U.S. at 612 ("[The ADEA] requires the employer to ignore an employee's age . . . it does not specify *further* characteristics that an employer must also ignore.") (emphasis in original).

## V. CONCLUSION

O'Connor has adequately presented a prima facie case of age discrimination. However, O'Connor has failed to adequately rebut Cymer's legitimate, non-discriminatory reason for his discharge because he has not put forth evidence tying Robertson's comments or Cymer's decision to terminate him to his age. As such, O'Connor cannot meet his burden under the last *McDonnell Douglas* prong in proving that Cymer's reason for his termination was pretextual.

## VI. ORDER

**IT IS HEREBY ORDERED THAT**:

1. Cymer's Motion for Summary Judgment (Dkt. 33) is GRANTED.

2. A separate judgment will be entered pursuant to Federal Rule of Civil Procedure 58(a).

DATED: March 5, 2020

David C. Nye
Chief U.S. District Court Judge